UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| *In re:* | ) | |
| *I80 Equipment, LLC* | ) | Case No. 17-81749 |
| | ) | |
| Debtor(s). | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| *Jeana K. Reinbold, solely as Chapter 7* | ) | |
| *Trustee of the Estate of I80 Equipment, LLC* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP. No. 19-08122 |
| | ) | |
| *Walmart, Inc. d/b/a WAL-MART and SAM'S* | ) | |
| *CLUB, a Delaware corporation, SAM'S* | ) | |
| *EAST, INC. d/b/a SAM'S CLUB, an* | ) | |
| *Arkansas corporation, SAM'S WEST, INC.* | ) | |
| *d/b/a SAM'S CLUB, a Delaware* | ) | |
| *corporation and SAM'S WEST, INC. d/b/a* | ) | |
| *SAM'S CLUB, an Arkansas corporation,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THE MOTION TO DISMISS**

COME NOW the Defendants (collectively, "Walmart" or the "Walmart Entities") and

state their Memorandum in Support of their Motion to Dismiss under Federal Rule of

Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b):

**Introduction**

Plaintiff Jeana Reinbold, in her capacity as Trustee for the Estate of Debtor I80

Equipment, LLC (the "Trustee" for the "Debtor") alleges a scheme of actual and fraudulent

transfers under 11 U.S.C. § 548(a)(1). The Trustee alleges that the Debtor purchased goods from

Walmart stores and Sam's Clubs owned by the Walmart Entities (the "Debtor–Walmart

Transfers"). Instead of Debtor retaining those goods as assets, the goods were transferred to

Debtor's sole owner, Erik Jones, and two other entities that Jones wholly owns (the "Debtor–

Jones Transfers").

The Trustee fails to state a claim for relief. The Trustee's allegations of fraud relate

entirely to the Debtor–Jones Transactions: the Debtor transferred the goods to Jones and his

entities — in exchange for nothing — allegedly to defraud the Debtor's creditors. But the alleged

fraud has nothing to do with the Walmart Entities. The transfers between the Debtor and

Walmart — a standard retail transaction of funds in exchange for goods — are untainted by the

Trustee's allegations of fraud, both actual and constructive. As such, the Trustee has failed to

state a claim for relief against these Defendant Walmart Entities.

### Facts as Stated in the Complaint

The Trustee, who is acting on behalf of the debtor, I80 Equipment, LLC (the "Debtor"),

asserts fraudulent transfers in the Complaint. (Doc. 1.) The Debtor filed a chapter 7 bankruptcy

petition on December 6, 2017. (Doc. 1, ¶ 10.)

Erik P. Jones ("Jones") is at the center of this alleged scheme. Jones owned 100% of the

Debtor, as its only member, as well as two other companies: (1) Jones Lease Properties, LLC

("Jones Lease"); and (2) J.P. Rentals, LLC ("JP Rentals"). (Doc. 1, ¶¶ 12–19).

The Debtor bought goods from Walmart.[1] The fraudulent transfer scheme was this: on

various dates, "funds of the Debtor in the amount of $33,353.44 [in aggregate] were transferred

by credit card to [Walmart and Sam's Club] in return for value provided to Jones Lease, JP

Rentals, and/or Jones ('Fraudulent Transfers')." (Doc. 1, ¶ 21.)

The Trustee's exhibits purport to show the Fraudulent Transfers:

---

[1] The Defendants are the alleged owners of the specific Walmart stores and Sam's Clubs at issue; this Motion and Memorandum does not delve into ownership issues, as the Complaint is assumed to be true and the actual ownership of the relevant stores is irrelevant at this point.

12717705.7

- Exhibit A is the Debtor's "Members Draw Register" showing Walmart transactions from January 1, 2015 to July 31, 2019, totaling $13,487.32.

- Exhibit B shows a Debtor's ledger entitled "JP Rentals Short Term Register," with Walmart transactions from the same period totaling $2086.87.

- Exhibit C is the Debtor's ledger entitled "Due from Jones Lease Properties, LLC Register," totaling $842.82 in Walmart transactions.

- Exhibit D is another "Members Draw Register" with one Sam's Club transaction for $206.75;

- Exhibit E is yet another "Members Draw Register" with Sam's Club transactions totaling $16,505.30.

- Exhibit F is a ledger totaling $202.70 of Sam's Club transactions entitled "Due from Jones Lease Properties, LLC."

The Trustee is seeking to avoid these transfers totaling $33,353.44, asserting against each Defendant one count for actual fraud (Counts I, III, V, VII, IX) and one count for constructive fraud (Counts II, IV, VI, VIII, X) under 11 U.S.C. § 548(a)(1). (Doc. 1, pp. 4–15.)

### Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b) applies in adversary proceedings. Fed. R. Bankr. P. 7012(b). Federal Rule 12(b)(6), in turn, provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." "In order to withstand a motion to dismiss, a complaint must allege enough facts to plausibly suggest a claim for relief." *In re THR & Associates, Inc.*, 12-72022, 2016 WL 3134653, at *3 (Bankr. C.D. Ill. May 26, 2016), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But if a complaint includes only labels and conclusions — or formulaic recitations of elements of a cause of action — it is

insufficient and must be dismissed. *In re THR & Associates, Inc.*, at \*3, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, in cases of alleged fraudulent conduct, as here, the enhanced pleading standard in Federal Rule of Civil Procedure 9(b) applies: fraud must be pled "with particularity," with the exception of allegations of intent. *In re THR & Associates, Inc.*, at \*3; Fed. R. Civ. P. 9(b). Stated differently, the plaintiff must plead in great detail the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

### Argument

The Bankruptcy Code's fraudulent-transfer statute, 11 U.S.C. § 548(a)(1), is the basis for the Trustee's claims:

> (a)(1) The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily —
>
> > (A) [**Actual Fraud**] made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> >
> > (B)(i) [**Constructive Fraud**] received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> > >
> > > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> > >
> > > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or [fourth prong irrelevant].

12717705.7

This Memorandum will first discuss the structure of the alleged fraudulent transfers — a structure that the Trustee's Complaint obscures — before addressing in turn the Trustee's claims for (a) actual fraud and (b) constructive fraud.

1.    **Each of Trustee's complained-of Fraudulent Transfers consisted of two separate transfers, which the Trustee's Complaint conflates into one.**

The Trustee alleges that the Debtor's funds were transferred by credit card to Walmart and Sam's Club (collectively, "Walmart"), in return for value provided to Jones Lease, JP Rentals, and/or Jones. A plain understanding of the complained-of transactions, therefore, is really two transfers: first, the Debtor used its funds to purchase goods from Walmart, receiving those goods in return; second, the Debtor transferred those goods to Jones Lease, JP Rentals, and/or Jones. In graph form, the transfers looked like this:



The ledgers submitted as attachments to the Complaint further support this view. On their face, each of the ledgers purports to depict aspects of the Debtor's books, with amounts owed between the Debtor and Jones, JP Rentals, and Jones Lease, respectively. Specifically, Exhibits A, D, and E evidence Member Draws (i.e., transfers to Debtor's sole member, Erik Jones);

12717705.7

Exhibits B evidences transfers to JP Rentals; and Exhibits C and F evidence transfers to Jones

Lease Properties. (Doc. 1-1.)

Thus, for each complained-of transfer, the Debtor transferred its funds in exchange for

goods (the "Debtor–Walmart Transfers"), then transferred those goods to Jones, JP Rentals, and

Jones Lease Properties (the "Debtor–Jones Transfers").

**2.     The Trustee's claims of actual fraud (Counts I, III, V, VII, and IX) fail as a matter of law because the Trustee has not alleged actual intent related to the Debtor–Walmart Transfers.**

The Trustee can avoid a transfer of the Debtor's interest in property if the debtor

voluntarily or involuntarily "made such transfer … with actual intent to hinder, delay, or defraud

any entity to which the debtor was or became, on or after the date that such transfer was made or

such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A).

The Trustee attempts to demonstrate actual fraud by alleging the existence of the "badges

of fraud." (Doc. 1, ¶ 24.) Importantly, **those badges of fraud relate to the Debtor–Jones**

**Transfers, not the Debtor–Walmart Transfers**. Specifically, for example:

- The Trustee alleges a "close relationship" between the parties to the transfer:

  Jones was the sole member of Debtor, JP Rentals, and Jones Lease. (Doc. 1, ¶

  24(a).) This "close relationship" has nothing to do with the Debtor–Walmart

  Transfers, as Jones has no relationship with Walmart (other than being a

  consumer).

- The Trustee alleges that the "consideration received by the Debtor" was

  inadequate. (Doc. 1, ¶ 24(b).) Again, this allegation relates to the Debtor–Jones

  Transfers, per the graph above. Walmart provided goods in exchange for the

  Debtor's payments; if the Trustee contends that Walmart provided insufficient

12717705.7

goods/consideration in return, the Trustee must plead that "with particularity,"
which it is has not done. Fed. R. Civ. P. 9(b).

- The Trustee alleges that the Debtor became insolvent immediately after the
  Fraudulent Transfers. (Doc. 1, ¶ 24(c).) Once more, this must relate to the
  Debtor–Jones Transfers, wherein the Debtor conveyed the purchased goods to
  Jones and his entities with no consideration in exchange. Walmart provided goods
  in exchange for payments, so Debtor's net assets remained at least roughly the
  same. (And, again, to the extent the Trustee contends otherwise, the Trustee must
  plead with particularity *how* the Debtor became insolvent.)

- The Trustee's allegation in Paragraph 24(g) most blatantly illustrates the problem:
  "The Fraudulent Transfers to Jones Lease and JP Rentals were concealed, as they
  were recorded in the Debtor's books, not as gifts, but as accounts receivable. Said
  entities had no obligation to repay the Fraudulent Transfers to the Debtor." (Doc.
  1, ¶ 24(g).) The Trustee is alleging that the Debtor transferred the goods to Jones,
  JP Rentals, and Jones Lease, in exchange for an account receivable in return.
  Whatever value this account receivable ultimately had, it supports the view that
  the Debtor–Jones Transfers (where the fraud was alleged) were separate from the
  Debtor–Walmart Transfers (where there are no fraud allegations).

Because the badges of fraud alleged in the Trustee's Complaint do *not* relate to the
Debtor–Walmart Transfers — they only reflect fraud in Debtor–Jones Transfers, to which the
Defendants were not parties — the Trustee's allegations do not show actual intent to hinder,
delay, or defraud as a matter of law. Stated differently, the Trustee's allegations are insufficient

12717705.7

"to connect the transfers at issue to the alleged scheme." *In re Equip. Acquisition Res., Inc.*, 481 B.R. 422, 432 (Bankr. N.D. Ill. 2012).

Moreover, under the enhanced pleading standard in fraud claims, the Trustee was required to plead in great detail the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB*, 649 F.3d at 615. Here, the Trustee has not pled in sufficient detail. The Trustee simply cites to seven exhibits showing each of the allegedly fraudulent transfers as line items. (Doc. 1-1.) The Trustee does not allege *who* made the purchases from Walmart (was it Erik Jones?); *what* exactly the transfers consisted of, in terms of what goods were purchased[2]; *where* the goods were purchased from, as the ledgers only state "Walmart" and "Sams Club" without any indication of the specific Walmart or Sam's Club store location; or *how* the Debtor intended to defraud its creditors by purchasing goods from Walmart and Sam's Club. Without the who, what, where, and how of these alleged fraudulent transfers, the Trustee has not stated a claim under its heightened pleading standard. Fed. R. Civ. P. 9(b).

As such, the Trustee failed to state a claim for actual fraud under § 548(a)(1). Counts I, III, V, VII, and IX should be dismissed.

**3.     The Trustee's claims of constructive fraud (Counts II, IV, VI, VIII, and X) fail as a matter of law because the Trustee has not shown how Walmart failed to provide "reasonably equivalent value."**

The Trustee may avoid a transfer of the Debtor's property if the Debtor voluntarily or involuntarily "received less than a reasonably equivalent value in exchange for such transfer." § 548 (a)(1)(B)(i). Once no reasonably equivalent value is established, the Trustee must show one of the other factors in § 548(a)(1)(B)(ii).

---

[2] Many line items have no description at all, while others are very generic, such as "cleaning supplies." (*See* Doc. 1-1.)

8

Here, the Court need not look past reasonably equivalent value. The Complaint itself demonstrates that the Debtor paid Walmart $33,353.44 in aggregate. (Doc. 1, ¶ 20.) As one would expect, the Debtor received goods in return — goods that were held out for sale to consumers in the store. (Doc. 1, ¶ 20.)

Moreover, the Trustee does not complain that the value received from Walmart was insufficient. Instead, the Trustee complains that Jones, Jones Lease, and JP Rentals received that value, rather than Debtor, without providing value in return. (Doc. 1, ¶ 20.) But, as explained above, the Trustee is complaining about the wrong transactions.

In the Debtor–Walmart Transfers, Walmart provided reasonably equivalent value to Debtor: goods in exchange for payment. The Debtor (through owner Erik Jones) then transferred that property to Jones and his entities without reasonably equivalent value in return. The Trustee's claims for fraudulent transfers should be directed at Jones, Jones Lease, and JP Rentals for the Debtor–Jones Transfers, not at these Walmart Defendants for the Debtor–Walmart Transfers.

At a minimum, under the enhanced pleading standard in fraud claims, the Trustee was required to plead in great detail the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB*, 649 F.3d at 615. Here, the Trustee has not shown with particularity how the Debtor was *not* provided with reasonably equivalent value. Again, goods at Walmart are held out for sale to the public for a market price; it is difficult to decipher how Walmart could have provided goods in the ordinary course of its business that would not constitute reasonably equivalent value — especially here, when the Trustee has not demonstrated with allegations showing *who* made the purchases, *what* was purchased, *where* exactly the purchases were made, and *how* the purchases failed to constitute reasonably equivalent value. *AnchorBank, FSB*, 649

12717705.7

F.3d at 615 (plaintiff required to plead in great detail the "who, what, when, where, and how" of

the fraud). Trustee's conclusions that the Defendants failed to provide reasonably equivalent

value are no more than bare labels and formulaic recitations of the required elements of the

Trustee's claims. *Iqbal*, 556 U.S. 662, 678 (2009).

The Trustee failed to state a claim under § 548(a)(1)(B) against Walmart because the

Debtor received reasonably equivalent value from Walmart. Thus, Counts II, IV, VI, VIII, and X

must be dismissed for failure to state a claim.

**Conclusion**

For the reasons stated above, the Court must dismiss the Trustee's claims for actual fraud

and constructive fraud, as the allegations in the Complaint relate to the Debtor–Jones Transfers,

not the Debtor–Walmart Transfers. Because all claims fail, the entire Complaint must be

dismissed with prejudice.

Respectfully submitted:


By:    /s/ Clayton G. Kuhn
       Clayton G. Kuhn, #6298490
       600 Washington Avenue - 15th Floor
       St. Louis, MO  63101-1313
       314-231-3332
       314-241-7604 (Fax)
       E-mail:ckuhn@sandbergphoenix.com
       *Attorney for Defendants*

12717705.7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 23rd day of January 2020 a copy of the foregoing was filed and thereafter served using the Court's electronic filing system on the following counsel of record for Plaintiff:

Andrew W. Covey
Acovey1@hotmail.com

Jeana K. Reinbold
jeana@jeanareinboldlaw.com

_____
        */s/ Clayton G. Kuhn*

12717705.7