**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re:<br>I80 Equipment, LLC<br><br>　　　Debtor(s). | Case No. 17-81749<br><br>Chapter 7 |
| Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC<br><br>　　　Plaintiff,<br><br>v.<br><br>WALMART INC. d/b/a WAL-MART and SAM'S CLUB, a Delaware corporation, SAM'S EAST, INC. d/b/a SAM'S CLUB, an Arkansas corporation, SAM'S EAST, INC. d/b/a SAM'S CLUB, a Delaware corporation, SAM'S WEST, INC. d/b/a SAM'S CLUB, a Delaware corporation and SAM'S WEST, INC. d/b/a SAM'S CLUB, an Arkansas corporation<br><br>　　　Defendants. | AP. No.  19-8122 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

　　　Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC ("Plaintiff") for her Response to the Reply Memorandum of Law in Support of the Motion to Dismiss filed by WALMART INC. d/b/a WAL-MART and SAM'S CLUB, a Delaware corporation ("Walmart"), SAM'S EAST, INC. d/b/a SAM'S CLUB, an Arkansas corporation ("Sam's East Arkansas"), SAM'S EAST, INC. d/b/a SAM'S CLUB, a Delaware corporation ("Sam's East

1

Delaware"), SAM'S WEST, INC. d/b/a SAM'S CLUB, a Delaware corporation ("Sam's West Delaware") and SAM'S WEST, INC. d/b/a SAM'S CLUB, an Arkansas corporation ("Sam's West Arkansas" and collectively "Defendants") on March 3, 2020 (Doc. 16) ("Reply"),[1] states as follows:

## I. BACKGROUND

In their Motion to Dismiss (Doc. 8) and initial Memorandum of Law (Doc. 9), Defendants asserted Plaintiff's Complaint alleged that Debtor transferred funds to Defendants in return for goods which Debtor, instead of retaining such goods as assets, transferred to its owner, Jones and his two entities, Jones Lease and JP Rentals.[2] While appearing to reiterate this argument (Reply, p. 1-2, fn. 3), Defendants also concede that the Complaint does not allege the above, but instead alleges that, in return for Debtor's funds, Defendants transferred the goods directly to Jones and his entities (Reply, p. 2-3.) Defendants now argue that this "three party transaction" defies common sense, and that this Court should hold as a matter of law that the party who pays for goods in a standard Walmart/retail transaction must be deemed to have received the goods, unless actual facts are pled to overcome this presumption (Reply, p. 3-5, fn. 2). Defendants cite no authority for this proposition.

---

[1] Plaintiff again assumes the Reply was also filed on behalf of SAM'S EAST, INC. d/b/a SAM'S CLUB, a Delaware corporation, even though said entity is omitted from Defendants' case heading.

[2] All definitions in Plaintiff's Response filed on February 14, 2020 (Doc. 13) apply to this Response.

2

## II. ARGUMENT

**1.  There is no presumption that, as a matter of law, a party who pays for goods is deemed to have received the goods.**

As noted, Defendants declare the existence of the above legal presumption and further that it defies common sense to allege, for instance, that Jones used the Debtor's credit card to purchase goods (including groceries and tires for Jones' Mom-Doc. 1-1, p. 4) which were then delivered directly to him, individually.[3] Defendants do not explain why this is nonsensical. Rather, is it not nonsensical to argue that, as a matter of law, it must be presumed that upon payment Defendants delivered the groceries or other personal items to Jones, as Debtor's manager/agent, who then at some unknown point transferred them to Jones, individually? Other than possibly shielding the Defendants from liability in this case, what policy would be served by such a presumption?

Such a presumption would create uncertainty. For instance, when would this presumed second transfer be deemed to have taken place? When Jones took possession of the grocery bags? Or not until he put them in his cupboard at home? The answer could make a difference. For instance, if the groceries fell

---

[3] Defendants make the same argument as to purchases made for the benefit of Jones Lease and JP Rentals. It should be noted that over 90% of the goods purchased in this case were recorded in the Members Draw account, indicating these were personal goods for Jones which the Debtor paid for.

3

out of the grocery bag on the way out of the store and were damaged or destroyed, who would bear the risk of loss?[4]

Defendants' presumption would also affect the law regarding credit card liability. In *Blaisdell Lumber Co., Inc. v. Horton,* 575 A.2d 1386 (Sup. Ct. N.J. 1990) defendant's former boyfriend stole her credit card and used it to make purchases at a hardware store. The defendant denied receiving the hardware items or any benefit therefrom. The court held the defendant was not liable for the charges. The court did not mention Defendants' presumption. Had it been applied, the defendant would have been deemed to have received the goods and likely been held liable to pay for them under quantum meruit.

Likewise, Section 1602(p) of the Truth in Lending Act (15 U.S.C. § 1602(p)) defines "unauthorized use" as "a use of a credit card by a person other than the cardholder who does not have actual, implied or apparent authority for such use and *from which the cardholder receives no benefit."* (emphasis added). To enforce liability for the use of a credit card, the burden of proof is on the card issuer to show an authorized use. This statute makes no mention of Defendants' presumption (15 U.S.C. 1643(b)). Yet if it exists and is applied, a card issuer could always meet its burden of proof, there would never be an unauthorized use and cardholders would always be liable for unauthorized charges.

---

[4] While the value of groceries would likely not be significant, this issue could come up in another case where a valuable asset was paid for by one party and delivered to another.

4

In *In re Christofaro,* 360 B.R. 411 (Bankr. W.D.N.Y. 2007), a debtor-employee placed orders for building materials for his personal residence under his employer's name; the debtor was obligated to reimburse the employer within 30 days. The court noted "the indebtedness is like a credit card obligation." *Id.* at 414. The employer paid the bill, but the materials were delivered directly to the employee's residence. The employee filed bankruptcy without having paid the employer. The issue in the case was whether the debt to the employer was nondischargeable because "the debtor falsely represented an intent to reimburse at the time that *he acquired* goods by using the credit of his employer." *Christofaro,* 360 B.R. at 413 (emphasis added). Again, the court made no mention of Defendants' presumption. Similarly, in this case, Jones and his entities acquired goods using the Debtor's credit.

Finally, even if Defendants' presumption exists, Defendants admit that it may be rebutted if "actual facts are pled that could change that rule." (Reply, fn. 2). The Complaint does allege such facts; namely, in return for the payments, value was provided to Jones Lease, JP Rentals and /or Jones, not to the Debtor (Complaint, ¶20).

In sum, Defendants arguments for this Court to apply their alleged presumption and a "common-sense reading" of the Complaint are simply attempts to rewrite the Complaint, which cannot be done. The Complaint's well-pled facts must be taken as true.

Defendants again argue that the Complaint's Exhibits suggest that Debtor received the goods "by operation of law" and transferred them to Jones and his entities. They do not. As the Trustee previously noted, had the Debtor initially acquired the goods from Defendants, an entry would have been made in the Debtor's books increasing an asset account (inventory) in the amount of the purchase price. When the Debtor then transferred the goods to Jones or his entities, an entry would have been made in the books decreasing the asset account in the same amount. That no such entries were made is evidence the Debtor never acquired title to the goods.

Finally, Defendants assert that the Complaint's allegation that funds of the Debtor were transferred to Defendants in return for value provided to Jones or his entities, not to the Debtor ("Fraudulent Transfer Allegation") is both (1) a conclusion unsupported by well-pled facts (Reply, p. 2); and (2) a legal conclusion as to the effect of the transfer (Reply, p. 3). Defendants also suggest that it is necessary for the Plaintiff to allege Defendants were complicit in the fraud in order in order to state a claim (Reply, fn. 1).

As previously noted in Plaintiff's initial Response (Doc. 13, p. 4), under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" The pleading standard Rule 8 announces does not require "detailed factual

6

allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citations omitted). Legal conclusions or bare and conclusory allegations are insufficient to state a claim. Nevertheless, even with the heightened pleading requirements of *Iqbal* and *Twombly*, the pleading requirements to survive a motion to dismiss remain low. *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 589 (7th Cir. 2016).

The Fraudulent Transfer Allegation is well-pled. The exact date, payee, amount and last 4 digits of the credit cards (or check numbers) are set forth in Exhibits A-F. As noted, said Allegation asserts that the transfers were made in return for value provided to Jones Lease, JP Rentals and/or Jones, not to the Debtor, which is supported by the absence of any entries into an asset account. The Fraudulent Transfer Allegation is thus highly detailed and is not a mere legal conclusion or a bare and conclusory allegation. It is also not necessary to allege that the Defendants were complicit in the fraud. Initial transferees covered by Section 550(a)(1) cannot use the value-and-good-faith defense provided by Section 550(b). *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 895 (7th Cir.1988).

### 2. The Actual Fraud Counts plead the circumstances constituting fraud with sufficient particularity.

The Reply argues that the Actual Fraud Counts are not pled with sufficient particularity because, although they allege that the property transferred to Defendants was money, they do not allege what property was

7

transferred by Defendants to Debtor. This is correct because said Counts allege that Debtor received nothing from Defendants. Defendants also repeat their previous argument that the Badges of Fraud relate to the Debtor-Jones transfers; the Complaint does not allege such transfers ever occurred (Doc. 13, pp. 7-8).

### 3. The Constructive Fraud Counts are also sufficiently pleaded.

Defendants argue the above Counts are insufficient under *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074 (7th Cir. 1997) and *In re Wolf*, 595 B.R. 735 (Bankr. N.D. Ill. 2018).

In *General Electric,* the court held that an action for constructive fraud filed by a creditor under the Illinois Uniform Fraudulent Transfer Act was subject to Fed.R.Civ.P. 9(b). First, this was not a bankruptcy case filed by a chapter 7 trustee under Section 548 (although the court did make reference to said Section). Second, as noted in *In re Petters Co., Inc.,* 495 B.R. 887 (Bankr. D. Minn. 2013), *as amended* (Aug. 30, 2013), the court seemed to assume that Rule 9(b) applied. It did not expressly pose or make a choice between said Rule and Rule 8(a) based on a specific analysis. *Id.* at 916. Third, the complaint which the court upheld alleged only that the debtor had transferred substantially all of its assets and did not receive any reasonably equivalent value, which rendered the debtor insolvent and unable to pay the plaintiff. As the Constructive Fraud Counts allege substantially more detail than this, they too are sufficient under the *General Electric* standard, if it applies.

In *In re Wolf* (which is non-binding on this Court) the court, after noting that Rule 9(b) applied to constructive and actual fraud, held:

> To plead an actual or constructive fraud with the necessary particularity, the complaint must allege what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances. *Wolf*, 595 B.R. at 763.

The Constructive Fraud Counts meet these requirements. They allege what and how much was transferred ($33,353.44), the exact dates of each transfer, how the transfers were made (credit cards or checks), who made each transfer (Debtor), who received each transfer (Walmart or Sams Club) and under what circumstances (in exchange for less than reasonably equivalent value while the Debtor was insolvent, etc.).

*Wolf* also held that Rule 9(b) is relaxed where a bankruptcy trustee is the plaintiff and where specific information is peculiarly within the adverse parties' knowledge. The court concluded that it would not "strain to apply Rule 9(b) rigorously against the trustee." *Id.* at 763.

Defendants again allege that the Constructive Fraud Counts fail because the "specific property" received by the Debtor from Defendants is not identified. As noted, the Debtor received nothing from Defendants. Also, the value which was transferred to Jones and his two entities in exchange for the Debtor's payments is peculiarly within the Defendants' knowledge. Plaintiff should not be required to specify such value.

### III. CONCLUSION

WHEREFORE for the foregoing reasons, Plaintiff prays that this Court deny the Motion, and that Plaintiff be granted such other relief as is just.

> Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC
>
> By: /s/ Andrew W. Covey
> One of her attorneys  #06183817
> 416 Main Street, Suite 700
> Peoria, IL  61602
> Tel:  309-674-8125
> Email:  acovey1@hotmail.com

### PROOF OF SERVICE

The undersigned certifies that a true and accurate copy of the above document was duly served upon anyone who has electronically entered his appearance herein by notice of electronic filing on 3/17/20.

/s/Andrew W. Covey